150 N.J. Super. 185 (1977)
375 A.2d 285
PATRICIA L. BIDDLE, PLAINTIFF,
v.
RALPH T. BIDDLE, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 28, 1977.
*188 Mr. Gregory V. Sharkey for plaintiff.
Mr. Roger A. Clapp for defendant.
ARNONE, J.S.C.
The issue presented here is whether an order in a matrimonial matter which has been reduced to a judgment can be the basis of a motion in aid of litigant's rights under R. 1:10-5.
Defendant argues that it cannot. He states that once a plaintiff/creditor has chosen to reduce a Chancery Division Order to a judgment he has chosen his remedy and cannot thereafter seek that court's aid in enforcing his rights under the order. Plaintiff in that situation has a plain, adequate and complete remedy at law  he can enforce the judgment by executing upon it.
Defendant argues that this is especially true here where the amount due under the judgment is for past-due legal fees. Here the failure to enforce the judgment under R. 1:10-5 will not result in the creditor becoming a ward of the State as would possibly be the case where the judgment is for amounts due for support or alimony. He argues that if the court grants relief, it will become a mere collection agency for legal fees in a matrimonial action.
N.J.S.A. 2A:16-18 provides:
Every judgment, or order for the payment of money, entered in the superior court, chancery division, from the time of its entry *189 upon the civil docket, and every decree or order for the payment of money, of the former court of chancery, from the time it was signed, shall have the force, operation and effect of a judgment of the superior court, law division, and execution may issue thereon as in other cases, subject, however, to the provisions of section 2A:16-19 of this title.
N.J.S.A. 2A:16-19 provides:
No such judgment or order of the superior court, chancery division, and no such decree or order of the former court of chancery, shall, as against a person not a party thereto, become a lien or bind any real estate other than that specifically mentioned and described in the judgment, order or decree, or in the complaint, bill of complaint or petition, upon which the same is founded unless such judgment, order or decree is one for the payment of money from 1 person to another and
(1) Unless and until an abstract of such judgment, order or decree shall be entered upon the civil judgment and order docket of the superior court, upon the written request of 1 of the parties thereof, in the manner provided by law for the entry of abstracts of judgments upon said dockets, or
(2) Unless a statement or abstract of such decree was recorded in the office of the former supreme court prior to September 15, 1948, in accordance with law.
However, R. 4:59-1(a) provides in pertinent part:
(a) In General. Process to enforce a judgment or order for the payment of money, other than alimony or maintenance awarded in a matrimonial action, and process to collect costs allowed by a judgment or order, shall be a writ of execution, except if the court otherwise orders or if in the case of a capias ad satisfaciendum the law otherwise provides.
R. 4:59-1(a) would seem to indicate on its face that execution could never be the appropriate process to enforce an order for alimony or maintenance issued in an alimony action.
However, the Supreme Court in Joseph Harris & Sons, Inc. v. Van Loan, 23 N.J. 466, 471 (1957), had before it the interpretation of R.R. 4:74-1, predecessor to the present R. 4:59-1(a). R.R. 4:74-1 stated, in pertinent part, that a writ of execution is the proper process to enforce *190 a judgment or order for the "payment of money, other than alimony or maintenance awarded in a matrimonial action." (Emphasis supplied). The court there found that for a century or more the practice in this State has required that past-due payments of alimony or maintenance be established by a formal order or decree of the court as past-due and owing, and when that was done such decree could be docketed and a lien established in accordance with the provisions of N.J.S.A. 2A:16-19.
Therefore, R. 4:59-1 merely implements the statute procedurally. The rule indicates that an order or judgment for the payment of alimony or maintenance as an annuity was not such an order or judgment under the established practice upon which a writ of execution could issue as a matter of course. The court in Joseph Harris & Sons Inc. stated that
Further, as a matter of practice a judgment for past due alimony is a final resort in most cases. Enforcement of an order for alimony and maintenance past due is usually by a proceeding in contempt, and other less drastic steps are taken before a judgment is entered upon which execution can be issued. But once a judgment or order is entered establishing a fixed sum of money due for past due payments of alimony and maintenance such judgment or order insofar as it adjudges money to be due from the defendant to the plaintiff resembles a judgment at law in the pecuniary obligations it imposes and makes them equivalent to such judgments in their effects under the statute. [23 N.J. at 471]
Thus, R. 4:59-1 imposes no barrier to the issuance of a writ of execution to enforce an order for the payment of alimony or maintenance in a matrimonial action. It only denies the remedy of execution to the original award of alimony or maintenance.
The question then arises  once the order has been reduced to a judgment and the writ is issued  if the entire amount of the judgment is not satisfied by execution upon the writ, can the creditor resort to the court under R. 1:10-5 for the amount of the deficiency.
*191 It should first be pointed out that the first and most obvious consequence of a judgment is that it establishes an indisputable obligation and confers upon the successful party the right to issue execution or other process of the court for its enforcement. Yet this is not an integral part of the judgment. The judgment is merely the affirmation of liability. The right to use the process of the court for its enforcement is a consequence the law attaches to it. West Jersey Title Co. v. Industrial Trust Co., 27 N.J. 144, 150 (1958).
In a matrimonial action the order is simply affirmation that one party is bound or has agreed to pay to the other party a certain amount during a specified time period. The agreement to pay legal fees thus judicially established may be specifically enforced in a court of equity. Among the original and undoubted powers of a court of equity is that of entertaining a bill filed for enforcing and carrying into effect a decree of a court, as the exigencies of the case or the interests of justice may require. Id. at 151.
Incarceration under R. 1:10-5 is part of the equitable process to enforce judgment, but is available only against a resistive suitor capable of meeting the judgment. The purpose of incarceration is to compel payment of the arrearages. Incarceration is founded upon the court's conclusion from the evidence that, in conjunction with defendant's disobedience of the order, he clearly possessed the financial means but not the willingness to meet the order. Federbush v. Federbush, 5 N.J. Super. 107, 112 (App. Div. 1949); Busch v. Busch, 91 N.J. Super. 281, 285 (Ch. Div. 1960).
It should be noted that past-due installments of support and alimony do not vest but are subject to the control of the court. Federbush v. Federbush, supra 5 N.J. Super. at 110. The court in Welser v. Welser, 54 N.J. Super. 555 (App. Div. 1959), had before it the question of the propriety of an order of the trial court which, after a finding of arrearages in the amount of $5,685, allowed plaintiff *192 only arrearages of $1,605 and extinguished the balance of the arrears; the order further denied plaintiff the right to execution and allowed defendant to pay the allowed arrearages at the rate of $5 a week. Plaintiff argued on appeal that the court had no authority to deny execution at once of the entire amount. The court noted that:
Were this the law the court would to that extent be powerless to apply equitable principles in the administration of its statutory jurisdiction over alimony and maintenance and would be obliged to act as a mere administrative agency, impotent to prevent its processes from being employed in the furtherance of inequity and injustice. This court has always been most zealous in applying equitable principles to all phases of the marital relationship. [at 561]
A court of equity controls its own judgment  a court of chancery has jurisdiction to effectuate its decree by appropriate process, including the imposition of penalties, attachment for contempt, injunction and sequestration. A party may now avail himself of the process of law courts as well as that process, which is peculiar to equity. Id. at 563-564; Busch v. Busch, supra 91 N.J. Super. at 286.
Courts have inherent power to enforce their own judgments and should see to it that they are enforced when they are called upon to do so. To deprive a court of power to execute its judgments is to impair its jurisdiction, and the general rule is that every court having jurisdiction to render a particular judgment has inherent power and authority to enforce it, and to exercise equitable control over such enforcement. Thus, a court of equity has inherent power to enforce its decrees. A court of equity retains and possesses the power to control the manner of the execution of its decree, and has the inherent right to modify, by a subsequent order, the manner in which it shall be enforced. [Welser v. Welser, supra 54 N.J. Super. at 564]
Thus, in sum, N.J.S.A. 2A:16-18 gives an important added benefit to the judgment creditor, but such a grant cannot be used to restrict the powers the court of equity has had over the centuries.
*193 In matrimonial cases the power of this court to limit the manner and method of collecting arrearages is a salutary principle of equity which must be upheld. The trial court quite properly can forbid a plaintiff's enforcement of a technical legal right which would result in unconscionable injury to a defendant. Id. at 565.
Therefore, it seems obvious that the court would have the power to entertain an application for relief to litigant's rights under R. 1:10-5 in a situation such as here, where an order which has been reduced to judgment and execution issued thereon is now sought to be enforced under R. 1:10-5.
Whether the relief sought here should be granted would depend on the application of equitable principles to the particular factual situation which is presented, and relief would therefore be within the discretion of the court. Our Supreme Court has noted in Williams v. Williams, 59 N.J. 229, 233 (1971), the purpose of and public policy supporting an award of legal fees in a matrimonial action.
Here the court finds that the defendant has the financial ability to pay the arrearages due. Moreover, it is conceivable that clients, such as here, would have difficulty obtaining private attorneys to represent them in matrimonial actions if unnecessary roadblocks are placed between these attorneys and the recovery of their legal fees. Such clients would then have to resort to legal aid at a resultant cost to the State. Ferrigno v. Ferrigno, 115 N.J. Super. 283, 284 (Ch. Div. 1971).
For the above reasons the defendant's motion for an order amending the order entered on November 23, 1976 is denied.